UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
SYLO SUPPLY, INC. and SURREAL BRANDS : 
LLC,                                                            :
                                                                      :
                                          Plaintiffs,       :          REPORT AND
                                                                      :          RECOMMENDATION
         -against-                                          :
                                                                      :          20-CV-5633 (EK)(MMH)
JUZIHAO RESOURCE MANAGEMENT CO. LTD.:
a.k.a. BRAVE FINDER, a.k.a. AMAZON          :
STOREFRONT CAPKIT DIRECT, TENGXIN       :
PLASTIC PRODUCT FACTORY CO. LTD., and   :
YIN QIONG,                                                 :
                                                                      :
                                          Defendants.     :
------------------------------------------------------------- x
**MARCIA M. HENRY**, United States Magistrate Judge:

      Plaintiffs Sylo Supply, Inc. ("Sylo") and Surreal Brands LLC ("Surreal" or "Surreal

Brands") sued Defendants Juzihao Resource Management Co. Ltd., a.k.a. Brave Finder, a.k.a.

Amazon Storefront Capkit Direct ("Juzihao"); Tengxin Plastic Product Factory Co. Ltd.

("Tengxin"); and Yin Qiong ("Qiong"), alleging infringement under the Copyright Act,

17 U.S.C. §§ 101 *et seq.*, trademark infringement under common law and the Trademark Act

of 1946, 15 U.S.C. §§ 1051 *et seq.* (the "Lanham Act"), and common law claims of unfair

competition, false designation of origin, tortious interference with prospective economic

advantage, and trade libel.  (*See generally* Am. Compl., ECF No. 7.)[1]  Before the Court is

Plaintiffs' motion for default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2)

---

[1] All citations to documents filed on ECF are to the ECF document number (*i.e.*, "ECF No. __")
and pagination of "__ of __" in the ECF header unless otherwise noted.

and Local Civil Rule 55.2.  (*See generally* Mot., ECF No. 20.)[2]  The Honorable Eric R. Komitee referred the motion for report and recommendation.

For the reasons set forth below, the Court respectfully recommends that Plaintiffs' motion should be **granted in part.**

## I.    BACKGROUND

### A.    Factual Allegations

The following facts are drawn from the Amended Complaint and documents incorporated by reference into the Amended Complaint, which are assumed to be true for the purposes of this motion.[3]  *See Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187–90 (2d Cir. 2015).

Sylo is a New York corporation, and Surreal Brands is a New York limited liability company ("LLC") that is a wholly owned subsidiary of Sylo.  (Am. Compl., ECF. No. 7 at 2 ¶ 2.)  Plaintiffs offer for sale various products through Amazon.com and other retailers and

---

[2] The motion includes a memorandum of law (ECF 20-1) ("Mem."); Affidavit of Andrew Bochner (ECF No. 20-2) ("Bochner Aff.") and attached exhibits (A through K, ECF Nos. 20-3 through 20-13); and a proposed order (ECF No. 20-14).

[3] Plaintiffs' motion relies on five exhibits that were attached to the original complaint but that were not reattached to the Amended Complaint: Exhibit A (email from Yin Qiong, ECF No. 1-1), Exhibit B (images of Plaintiffs' products, ECF No. 1-2), Exhibit C (images of Defendants' infringing products, ECF No. 1-3), Exhibit D (United States Copyright Office Public Catalog screenshots, ECF No. 1-4), and Exhibit E (United States Trademark Office Registration, ECF No. 1-5).  (*See* ECF Nos. 1, 7, 20.)  The Court finds that these exhibits are incorporated by reference into the Amended Complaint and considers them for purposes of determining liability. "A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion."  Fed. R. Civ. P. 10(c); *see, e.g.*, *Allstate Ins. Co. v. New Century Pharm. Inc.*, No. 19-CV-5702 (ENV)(VMS), 2021 WL 7830141, at *2  n.1 (E.D.N.Y. Aug. 13, 2021) (relying on facts from documents incorporated by reference into the complaint for purposes of assessing liability for default judgment motion), *adopted by* Order Adopting Rep. & Rec., No. 19-CV-5702 (ENV)(VMS) (E.D.N.Y. Mar. 24, 2022); *J&J Sports Prods., Inc. v. Dowling*, No. 18-CV-5086 (MKB)(RML), 2019 WL 4727448, at *3 n.3 (E.D.N.Y. Sept. 27, 2019) (same).

distributors.  (*Id.* at 4 ¶ 12.)  Juzihao and Tengxin are Chinese LLCs that do business under the "Brave Finder" and "Capkit" names.  (*Id.* at 2 ¶ 3.)  Yin Qiong is an individual who "is an employee, owner or otherwise associated" with Juzihao and Tengxin.  (*Id.*)  Defendants sell various toys, activities, and games through e-commerce sites.  (*Id.* at 2–3 ¶ 4.)

Some products that Plaintiffs sell include (1) Amazon Standard Identification Number ("ASIN") B07H9GY33H for Dan&Darci Dig a Dozen Dino Eggs, (2) ASIN B07FB2VN8L for Dan&Darci Light-up Crystal Growing Kit, and (3) ASIN B0763TLL6V for Dan&Darci Light-up Terrarium Kit.  (*Id.* at 4 ¶ 12; Compl. Ex B., ECF No. 1-2.)[4]  Defendants offer for sale the following: (1) ASIN B07STYLDCG for Brave Finder Dino Egg Dig Kit; (2) ASIN B088GKDM1C for Brave Finder Light-up Crystal Growing Kit; (3) ASIN B07Q9YQFSP for Brave Finder Light-up Terrarium Kit; (4) ASIN B08BL5WKR5 for Brave Finder Light-up Terrarium Kit; (5) ASIN B083PVTXVD for Light-up Dino World Terrarium Kit; (6) ASIN B08S7BZ2MF for Crystal Science Lab; and (7) ASIN B08X6QJMC2 for Dinosaur Eggs. (Am. Compl., ECF No. 7 at 4–5 ¶ 13; Compl. Ex. C, ECF No. 1-3.)

Surreal owns five pieces of intellectual property (the "Works") that were registered with the United States Copyright Office in May and July 2020: (1) Crystal Growing Kit, (2) Dig a Dozen Dino Eggs, (3) Dino Egg Listing Photographs, (4) Light-Up Terrarium, and (5) Light-Up Terrarium Photographs.  (Am. Compl., ECF No. 7 at 5 ¶¶ 3–4; Compl. Ex. D, ECF No. 1-4.)  Defendants willfully reproduced and sold portions of the Works without

---

[4] The Complaint and the Amended Complaint refer to the products depicted in Exhibit B as "various Infringing Products."  (Compl., ECF No. 1 at 4 ¶ 12; Am. Compl., ECF No. 7 at 4 ¶ 12.) The memorandum of law in support of default correctly identifies the products in Exhibit B as "the Plaintiffs' Products."  (Mem., ECF No. 20-1 at 10.)

obtaining Surreal's authorization or compensating Surreal for the use.  (*Id.* at 6 ¶ 6.)  By failing to obtain Surreal's authorization to use the Works or to compensate Surreal for the use, Defendants have avoided any financial costs associated with such permission (e.g., license fees) and any restrictions that Surreal is entitled to place on any such use.  (*Id.*)

Additionally, Sylo owns U.S. Trademark Registration Number 5975455 for the mark "GROWS BY DAY GLOWS AT NIGHT" ("the Sylo Mark"), the registration certificate for which was issued on February 4, 2020.  (*Id.* at 7–8 ¶ 14; Compl. Ex. E, ECF No. 1-5.)  Sylo has used the mark since October 2017 in connection with the manufacture, distribution, offering for sale, marketing, and promotion of children's scientific and educational kits.  (Am. Compl., ECF No. 7 at 8 ¶ 15.)  Sylo has used the Sylo Mark widely, continuously, and exclusively to identify its goods and Sylo as the source, and the Sylo Mark is distinctive to the consuming public and Plaintiffs' trade.  (*Id.* ¶¶ 16–17.)  Without Sylo's permission, and after Sylo acquired exclusive rights to the Sylo Mark, Defendants began using a mark identical to the Sylo Mark to sell and market children's scientific and educational kits.  (*Id.* at 8–9 ¶¶ 19–20; *see* Compl. Ex. C, ECF No. 1-3.)

At a date thereafter, Defendants' listing ASIN B07STYLDCG (for Brave Finder Dino Egg Dig Kit) was removed from Amazon.com.  (*See* Compl. Ex. A, ECF No. 1-1.)  In October 2020, following the removal of this product, Qiong sent a letter to Amazon alleging that the removal for infringement was committed in error and based on an "invalid, libelous" complaint.  (*See* Am. Compl., ECF No. 7 at 12 ¶¶ 41, 45–46; Compl. Ex. A, ECF 1-1.)

## B.    Procedural History

Plaintiffs initiated this action in November 2020 and amended the Complaint in March 2021.  (Compl., ECF No. 1; Am. Compl., ECF No. 7.)  The Court granted Plaintiffs' motion

for alternate service in October 2021, and Plaintiffs served Defendants with process via email. (*See* ECF Nos. 10, 12–13, 15–16.)  After Defendants failed to appear or otherwise respond to the Complaint, the Clerk of Court entered default against them in January 2022.  (ECF No. 17.)

Plaintiffs initially moved for default judgment in March 2022.  (ECF No. 18.)  Judge Komitee referred the motion for report and recommendation.  (Mar. 14, 2022 Order.)  Plaintiffs later withdrew the motion without prejudice after the Court questioned their failure to comply with the Local Civil Rules' requirements for default judgment motions.  (Dec. 19, 2022 Order; ECF No. 19.)

Plaintiffs filed their second motion for default judgment in January 2023, seeking actual and statutory damages, costs, attorneys' fees, and a permanent injunction preventing Defendants or any of their affiliates from committing any further copyright or trademark infringement.  (*See generally* Mot., ECF No. 20.)  Judge Komitee referred the motion for report and recommendation.  (Jan. 24, 2023 Order.)

To date, Defendants still have not appeared in this case or responded to Plaintiffs' motion.

## II.    STANDARD FOR DEFAULT JUDGMENT

Rule 55 of the Federal Rules of Civil Procedure dictates a two-step process for a party to obtain a default judgment.  Fed. R. Civ. P. 55(a)-(b); *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005); *Nam v. Ichiba Inc.*, No. 19-CV-1222 (KAM), 2021 WL 878743, at *2 (E.D.N.Y. Mar. 9, 2021).  First, when the plaintiff shows, such as by affidavit, that a defendant has "failed to plead or otherwise" defend against an action, the Clerk of Court shall enter a default. Fed. R. Civ. P. 55(a).  Second, and "[i]n all other cases, the party must apply to the

court for a default judgment." Fed. R. Civ. P. 55(b)(2); *Victoriano Gonzalez v. Victoria G's Pizzeria LLC*, No. 19-CV-6996 (DLI)(RER), 2021 WL 6065744, at \*5 (E.D.N.Y. Dec. 22, 2021). To "enter or effectuate judgment" the Court is empowered to "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2).

The decision to grant or deny a default motion is "left to the sound discretion of a district court." *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999) (cleaned up). The Court must draw all reasonable inferences in favor of the movant. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). However, "[a] default . . . only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendant." *Double Green Produce, Inc. v. F. Supermarket Inc.*, 387 F. Supp. 3d 260, 265 (E.D.N.Y. 2019) (internal quotations and citation omitted).

## III.    JURISDICTION AND VENUE

### A.    Subject Matter Jurisdiction

The Court has federal question jurisdiction over Plaintiffs' claims brought under the Copyright Act and the Lanham Act and supplemental jurisdiction over Plaintiffs' remaining claims. 28 U.S.C. §§ 1331, 1338, 1367.

### B.    Service of Process

"[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant." *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010). "For a federal court to exercise personal jurisdiction over a defendant, the plaintiff's service of process upon the defendant must have been procedurally proper." *Windward Bora, LLC v. Valencia*, No. 19-CV-4147 (NGG)(RER), 2020

WL 6470293, at *2 (E.D.N.Y. Oct. 16, 2020), *adopted by* 2020 WL 6450286 (E.D.N.Y. Nov. 3, 2020) (cleaned up).

In this case, Defendants are based in China.  Individuals and corporations outside the United States must be served in accordance with Rule 4(f).  Fed. R. Civ. P. 4(f), (h); *Safavieh Int'l, LLC v. Chengdu Junsen Fengrui Tech. Co., Ltd.-Tao Shen*, No. 23-CV-3960 (CM), 2023 WL 3977505, at *2 (S.D.N.Y. June 13, 2023).  A plaintiff may serve an individual or corporate defendant outside the United States "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents" or "by a method reasonably calculated to give notice" that is not prohibited by the foreign country's law.  Fed. R. Civ. P. 4(f); *see also* Fed. R. Civ. P. 4(h).  The Hague Convention only applies when the address of the person to be served is known.  *Safavieh*, 2023 WL 3977505, at *3; *see also Kelly Toys Holdings, LLC v. Top Dep't Store*, No. 22-CV-558 (PAE), 2022 WL 3701216, at *6–7 (S.D.N.Y. Aug. 26, 2022) (finding defendants' addresses were unknown where plaintiff had exercised reasonable diligence in locating physical addresses that plaintiff later determined were incorrect).

Here, the Court has personal jurisdiction over Defendants.  In October 2021, the Court found email service reasonably calculated to give adequate notice to all Defendants.  (Service Order, ECF No. 12.)  Following this order, Plaintiffs served all Defendants via email and attempted to send the summons and Amended Complaint via international courier.  (ECF Nos. 10, 12–13, 15.)  Although courts in this Circuit dispute whether email service on litigants in

China is permitted under the Hague Convention[5], the convention does not apply here because the Defendants' addresses are unknown. *Safavieh*, 2023 WL 3977505, at *3. Plaintiffs made diligent efforts to locate Defendants' physical addresses in China and, although they found *some* addresses, they were unsuccessful in obtaining the *actual* address of any defendant. (*See* Mot. for Alternate Service, ECF No. 10-1 at 7–8.) Thus, Defendants' actual addresses are unknown, despite Plaintiffs' diligent efforts, and the Hague Convention does not apply. *See Kelly Toys Holdings*, 2022 WL 3701216, at *6–7 (finding defendants' actual addresses unknown where plaintiff had located physical addresses on defendants' websites that turned out to be unconnected to defendants). Regardless, for the same reasons articulated in its October 2021 order, the Court finds service for all Defendants adequate here.[6]

---

[5] After this Court's alternate service order, a court in this Circuit found that the Hague Convention does not permit email service on litigants in China. *Smart Study Co., Ltd., v. Acuteye-Us*, 620 F. Supp. 3d 1382, 1393 (S.D.N.Y. 2022) (basing its finding on meeting minutes from the National Symposium on Foreign-related Commercial and Maritime Trial Work upon noting that the Supreme People's Court of China sometimes uses meeting minutes to distribute its views to lower courts); *see also Safavieh*, 2023 WL 3977505, at *5 (explaining that China's rules of civil procedure prohibit service through any channels other than those authorized in the Hague Convention and that service via email, not expressly authorized under that convention, is thus improper under Rule 4(f)). *But see W.J. Deutsch & Sons Ltd. v. Diego Zamora, S.A.*, No. 21-CV-11003 (LTS), 2022 WL 890184, at *5 (S.D.N.Y. Mar. 25, 2022) (rejecting strict formalistic approach to Hague Convention in favor of prioritizing actual notice).

[6] Additionally, Plaintiffs appear to assert that Qiong's letter to Amazon (Compl. Ex. A, ECF No. 1-1) is evidence that Defendants consented to jurisdiction. (Mem., ECF No. 20-1 at 13.) The Court disagrees. In the letter, directed to "Copyright Agent," Qiong "consent[s] to the jurisdiction of any United States federal district court in which you may be found." (Compl. Ex. A, ECF No. 1-1.) This letter does not refer to a specific court action and appears limited to addressing a complaint to Amazon about ASIN B07STYLDCG (for Brave Finder Dino Egg Dig Kit). (*See id.*) Accordingly, the Court declines to consider Qiong's letter as evidence of jurisdiction over Qiong or the other defendants.

C.    **Venue**

"[A] civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."  28 U.S.C. § 1391(b)(2).  Additionally, "for all venue purposes, a defendant not resident in the United States may be sued in any judicial district." 28 U.S.C. § 1391(c)(3).  "In a federal question case where a defendant resides outside the forum state, a federal court applies the forum state's personal jurisdiction rules 'if the federal statute does not specifically provide for national service of process.'"  *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997) (quoting *Mareno v. Rowe*, 910 F.2d 1043, 1046 (2d Cir. 1990)).  In New York, a court has jurisdiction over an out-of-state resident who (1) transacts any business or contracts anywhere to supply goods in the state or (2) commits tortious acts within the state.  N.Y. C.P.L.R. § 302. Here, Plaintiffs are New York-based companies, and all Defendants regularly conduct business in New York.  (Am. Compl., ECF No. 7 at 2–3 ¶¶ 2, 9.)  Venue is proper as to the corporate defendants, Juzihao and Tengxin because they both do business under the Brave Finder and Capkit names in New York.  *See* 28 U.S.C. § 1391(c)(3).  The individual defendant, Qiong, "is an employee, owner or otherwise associated with Defendants Juzihao, Tengxin and/or the Brave Finder and Capkit brands," which conduct business in New York.  (Am. Compl., ECF No. 7 at 2 ¶ 3.)  Thus, venue is proper for Qiong.  N.Y. C.P.L.R. § 302.

IV.    **DEFAULT JUDGMENT FACTORS**

Courts use the same three-factor test used to set aside a default judgment to determine whether to grant a default judgment.  *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993); *Avail 1 LLC v. Latief*, No. 17-CV-5841 (FB)(VMS), 2020 WL 5633869, at *4

(E.D.N.Y. Aug. 14, 2020). Specifically, courts examine "(1) whether the defendant's default was willful; (2) whether the defendant has a meritorious defense to the plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Courchevel 1850 LLC v. Rodriguez*, No. 17-CV-6311 (MKB), 2019 WL 2233828, at *3 (E.D.N.Y. May 22, 2019) (citing *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 170-71 (2d Cir. 2001)); *see also Guggenheim Cap., LLC v. Birnbaum*, 722 F.3d 444, 455 (2d Cir. 2013).

As to the first factor of willfulness, a defendant's failure to answer a complaint and respond to a motion for default judgment is considered willful. *Acosta v. DRF Hosp. Mgmt. LLC*, No. 18-CV-346 (DRH)(AKT), 2019 WL 1590931, at *6 (E.D.N.Y. Mar. 13, 2019), *adopted by* 2019 WL 1585225 (E.D.N.Y. Apr. 12, 2019) ("When a defendant is continually and 'entirely unresponsive,' defendant's failure to respond is considered willful."). After attempting to serve all Defendants, Plaintiffs were granted leave to execute alternate service on all Defendants. (*See* ECF Nos. 10, 12.) Given that all Defendants were properly served, Defendants' failure to respond to the Complaint demonstrates willfulness.

Second, without an answer to the Complaint, "the Court cannot determine whether a defendant has a meritorious defense and granting a default judgment is favored under those circumstances." *Avedana v. Casa Ofelia's Bakery LLC*, No. 20-CV-2214 (DG)(AKT), 2021 WL 4255361, at *4 (E.D.N.Y. Aug. 19, 2021), *adopted by* 2021 WL 4248857 (E.D.N.Y Sept. 17, 2021). As noted, Defendants have failed to answer or provide any defense to Plaintiffs' claims. Accordingly, a default is warranted.

Third, Plaintiffs will be prejudiced if the motion for default judgment is denied because they have no "alternative legal redress." *United States v. Myers*, 236 F. Supp. 3d 702, 708–09

(E.D.N.Y. 2017).  In other words, "[w]ithout the entry of a default judgment, Plaintiff [] would be unable to recover for the claims adequately set forth in the Complaint."  *Korzeniewski v. Sapa Pho Vietnamese Rest. Inc.*, No. 17-CV-5721 (MKB)(SJB), 2019 WL 312149, at *4 (E.D.N.Y. Jan. 3, 2019) (first alteration in original) (quoting *Sola Franchise Corp. v. Solo Salon Studios Inc.*, No. 14-CV-946 (JS)(AKT), 2015 WL 1299259, at *15 (E.D.N.Y. Mar. 23, 2015)).  Based on the foregoing, entry of default judgment is permissible.  The Court now turns to the issue of liability.

## V.    <u>LIABILITY</u>

In the Amended Complaint, Plaintiffs allege seven causes of action: copyright infringement under the Copyright Act (Count I); trademark infringement under the Lanham Act (Count II); common law trademark infringement (Count III); unfair competition under "federal law or New York state law" (Count IV); false designation of origin (unspecified) (Count V); tortious interference with prospective economic advantage (Count VI), and trade libel (Count VII).  (*See generally* Am. Compl., ECF No. 7 at 5–13 ¶¶ 2–53.)

### A.    **Copyright Infringement (Count I)**

The owner of a copyright has "exclusive rights" that include "any of the following: (1) to reproduce the copyrighted work in copies . . .; (2) to prepare derivative works based upon the copyrighted work; [or] (3) to distribute copies . . . of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending."  17 U.S.C. § 106. "Anyone who violates any of the exclusive rights of [a] copyright owner . . . is an infringer of the copyright or right of the author[.]"  17 U.S.C. § 501(a); *see Universal Instruments Corp. v. Micro Sys. Eng'g, Inc.*, 924 F.3d 32, 44 (2d Cir. 2019).  For a copyright holder to establish infringement, "two elements must be proven: (1) ownership of a valid copyright, and

11

(2) copying of constituent elements of the work that are original." *Abdin v. CBS Broad. Inc.*, 971 F.3d 57, 66 (2d Cir. 2020) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).

To state a claim for direct copyright infringement against an individual defendant, a plaintiff must plead that the individual was a "moving, active, conscious force" in the infringement. *Pado, Inc. v. SG Trademark Holding Co. LLC*, 537 F. Supp. 3d 414, 429 (E.D.N.Y. 2021) (cleaned up). "A person is vicariously liable for copyright infringement if the person had (1) the right and ability to supervise the infringing activity, and (2) an obvious and direct financial interest in exploitation of the copyrighted materials." *Id.* (citing *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930–31 (2005)).

## 1.    Ownership of a Valid Copyright

Regarding the first element, Plaintiffs establish ownership of valid copyrights for all five allegedly infringed Works. A "certificate of a registration made before or within five years after first publication of the work shall constitute *prima facie* evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c); *Jorgensen v. Epic/Sony Recs.*, 351 F.3d 46, 51 (2d Cir. 2003). Though Plaintiffs fail to provide a copy of a certificate of registration, they allege ownership and registration in compliance with the Copyright Act. (Am. Compl., ECF No. 7 at 5–6 ¶¶ 3–8.)

Specifically, the Amended Complaint alleges that "Surreal was the owner of the copyright Works at issue in this case" and states the copyright titles, registration numbers, and registration dates for the Works. (*Id.* at 5 ¶¶ 3–4.) While the Amended Complaint does not allege the dates of first publication for the Works, the Court may take judicial notice of the copyright registration information set forth in the United States Copyright Office's Public

Catalog.  *Fleishman v. World Bride Mag., LLC*, No. 19-CV-5595 (EK)(LB), 2020 WL 7774843, at *6 (E.D.N.Y. Oct. 27, 2020), *adopted by* 2020 WL 7770936 (E.D.N.Y. Dec. 30, 2020).  To that end, Plaintiffs submit screenshots of the Public Catalog entries for the Works, which include the following information: (1) accurate registration numbers;[7] (2) that Surreal Brands is the author on the application for each Work's copyright; (3) that the dates of first publication for each Work were in 2017 or 2018; and (4) that all the Works were registered in 2020.  (*See* Compl. Ex. D, ECF No. 1–4.)  Thus, Plaintiffs establish that the registration for each of Surreal's Works was made within five years of first publication.  17 U.S.C. § 410(c).  By defaulting, Defendants have failed to offer evidence showing that the certificate of registration is invalid.  *See Simhaq v. Kid Carter Touring, Inc.*, No. 20-CV-2057 (RPK)(RER), 2021 WL 3810754, at *3 (E.D.N.Y. Aug. 11, 2021), *adopted by* 2021 WL 3793876 (E.D.N.Y. Aug. 26, 2021).  Plaintiffs therefore have established that Surreal owns valid copyrights.

### 2.    Copying of Constituent Elements

To satisfy the second element, copying of constituent elements, a plaintiff "must demonstrate that: (1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's [work]."  *Abdin*, 971 F.3d at 66.  Plaintiff's work must be "original"—in other words, the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity.

---

[7] For the "Crystal Growing Kit" product, the applicable Public Catalog entry states that the registration number is TX000**8885**196, while the Amended Complaint alleges that the registration number is TX000**885**196.  (*Compare* Compl. Ex. D, ECF No. 1-4 at 2, *with* Am. Compl., ECF No. 7 at 5 ¶ 3.)  This Court will rely on the Public Catalog entry.  *See Fleishman*, 2020 WL 7774843, at *6.

*Bittichesu v. Lucia Lighting & Design, Inc.*, No. 2:20-CV-1612 (PKC)(RML), 2021 WL 3354298, at *3 (E.D.N.Y. June 28, 2021) (quoting *Feist Publ'ns*, 499 U.S. at 345), *adopted* (E.D.N.Y. Aug. 10, 2021). "Originality does not signify novelty; a work may be original even though it closely resembles other works so long as the similarity is fortuitous, not the result of copying." *MMS Trading Co. Pty Ltd. v. Hutton Toys, LLC*, No. 20-CV-1360 (MKB), 2021 WL 1193947, at *6 (E.D.N.Y. Mar. 29, 2021) (quoting *Feist Publ'ns*, 499 U.S. at 345). Additionally, two works are substantially similar when "an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Andy Warhol Found. for Visual Arts, Inc. v. Goldsmith*, 11 F.4th 26, 53 (2d Cir. 2021) (quotation marks omitted). Absent proof of direct copying, a plaintiff "may establish copying circumstantially by demonstrating that the person who composed the defendant's work had access to the copyrighted material and that there are similarities between the two works that are probative of copying." *Shull v. TBTF Prods. Inc.*, No. 18-CV-12400 (GBD), 2019 WL 5287923, at *5 (S.D.N.Y. Oct. 4, 2019) (quoting *Jorgensen*, 351 F.3d at 51.)

a.    **Corporate Defendants Tengxin and Juzihao**

Plaintiffs adequately allege that corporate Defendants Tengxin and Juzihao are liable for copyright infringement. Here, Plaintiffs allege that Surreal's Works are "original visual material and textual Works containing copyrightable subject matter" and that Defendants "published, reproduced, publicly displayed, distributed, and sold" at least portions of Surreal's Works. (Am. Compl., ECF No. 7 at 6 ¶¶ 6–8.) Additionally, Plaintiffs have sufficiently shown that Defendants' products and pictures are substantially similar to Surreal's Works. *Andy Warhol Found.*, 11 F.4th at 53. For example, Defendants' "Crystal Growing Kit" is substantially similar to Surreal's, in that the product names on Amazon both include "Crystal

Growing Kit," which is protected text under Surreal's copyright. (*See* Compl. Ex. B, ECF No. 1-2 at 2; *id.* Ex. C, ECF No. 1-3 at 4; *id.* Ex. D, ECF No. 1-4 at 2.) Likewise, as to Defendants' "Dino Egg Dig Kit . . . Discovery 12 Cute Dinosaurs," an average observer would recognize Defendants' kit of 12 dinosaur eggs as appropriating Surreal's kit "Dig a Dozen Dino Eggs" despite the slight differences in product labeling. (*See* Compl. Ex. B, ECF No. 1-2 at 3; *id.* Ex. C, ECF No. 1-3 at 5; *id.* Ex. D, ECF No. 1-4 at 3.) Moreover, the Dino Egg Listing photographs on the Amazon page for Surreal's "Dig a Dozen Dino Eggs" and those on Defendants' Dino Egg Dig Kit are near mirror images; they both depict eggs that appear to have the same color and texture, with the products positioned at similar angles, and each picture includes a group of three eggs with the one in front hatching. (*See* Compl. Ex. B, ECF No. 1-2 at 3; *id.* Ex. C, ECF No. 1-3 at 5; *id.* Ex. D, ECF No. 1-4 at 4.) Finally, both Surreal's and Defendants' terrarium products feature the copyrighted text "Light-up Terrarium" prominently on the toy packaging, and the product photographs for the respective products featured on Amazon are at similar angles, depict identically shaped terrariums, and depict terrariums with very similar interiors (i.e., four layers of the same color at the bottom). (*See* Compl. Ex. B, ECF No. 1-2 at 4; *id.* Ex. C, ECF No. 1-3 at 6; *id.* Ex. D, ECF No. 1-4 at 5–6.) Thus, the Court finds Plaintiffs sufficiently established the second element.

### b.    Qiong

Plaintiffs fail to show that Qiong is directly or vicariously liable for copyright infringement. The Amended Complaint alleges that Qiong "is an employee, owner or otherwise associated" with the corporate Defendants and is their "representative." (Am. Compl., ECF No. 7 at 2–3 ¶¶ 3, 8.) The Amended Complaint thereafter refers to "Defendants" when alleging infringing conduct, without additional facts about Qiong's participation. This

is insufficient to show Qiong's direct involvement in the infringement or status as a corporate officer and fails to demonstrate that he was a "moving, active, conscious force" in the infringement. *Pado*, 537 F. Supp. 3d at 429. Even assuming that Qiong had a direct financial interest in exploiting the copyrighting materials, Plaintiffs fail to allege that Qiong had "the right and ability to supervise the infringing activity." *Id.* Although Qiong sent a letter to Amazon about the removal of an allegedly infringing product (*see* Compl. Ex. A, ECF No. 1-1), this does not establish that he was an active figure in any alleged infringement in any capacity.

Accordingly, the Court respectfully recommends that corporate defendants Tengxin and Juzihao, but not Qiong, should be liable for copyright infringement as alleged in Count I.

## B. Trademark Infringement Under the Lanham Act (Count II)

Section 32 of the Lanham Act trademark provision states, in relevant part:

> Any person who . . . without the consent of the registrant . . . use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion . . . shall be liable in a civil action by the registrant.

15 U.S.C. § 1114(1)(a). To prevail on a trademark infringement claim under the Lanham Act, a plaintiff must prove that (1) it owns a valid, protectable trademark and (2) the defendant's use of the trademark creates a likelihood of consumer confusion. *See Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 84 (2d Cir. 2020) (quoting *The Sports Auth., Inc. v. Prime Hosp. Corp.*, 89 F.3d 955, 960 (2d Cir. 1996)). The Lanham Act is a strict liability statute and, as such, does not require proof of intent or knowledge to show liability. *Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*, 176 F. Supp. 3d 137, 153 (E.D.N.Y. 2016). Additionally, "a corporate officer may be held personally liable for trademark infringement and unfair

16

competition if the officer is a moving, active, conscious force behind the defendant corporation's infringement." *Id.* at 155 (cleaned up). The allegations in the Complaint demonstrate these elements as to corporate defendants Tengxin and Juzihao, but not to Qiong.

### 1.    Corporate Defendants Tengxin and Juzihao

#### a.    Ownership of a Valid, Protectable Trademark

A certificate of registration of a mark upon the United States Patent and Trademark Office ("USPTO") is *prima facie* evidence of the validity of the registered mark, the registration of the mark, the owner's ownership of the mark, and the owner's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate, subject to any limits stated in the certificate. 15 U.S.C. § 1057(b); *see Khan v. Addy's BBQ LLC*, 419 F. Supp. 3d 538, 552 (E.D.N.Y. 2019). Here, Plaintiffs allege they have a registered trademark under United States Trademark Registration Number 5975455 for the Sylo Mark. (Am. Compl., ECF No. 7 at 7–8 ¶ 14.) Plaintiffs also submit a copy of the registration certificate for the Sylo Mark issued by the USPTO on February 4, 2020. (Compl. Ex. E, ECF No. 1-5.) Thus, Plaintiffs have sufficiently established the first element.

#### b.    Likelihood of Consumer Confusion

When determining whether a defendant's use of a mark is likely to cause confusion, courts consider the following factors:

> (1) the strength of the trademark; (2) the degree of similarity between the plaintiff's mark and the defendant's allegedly imitative use; (3) the proximity of the products and their competitiveness with each other; (4) the likelihood that the plaintiff will "bridge the gap" by developing a product for sale in the defendant's market; (5) evidence of actual consumer confusion; (6) evidence that the defendant adopted the imitative term in bad faith; (7) the respective quality of the products; and (8) the sophistication of the relevant population of consumers.

*Tiffany & Co.*, 971 F.3d at 84–85 (citing *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961)).  "The application of the *Polaroid* test is not mechanical, but rather, focuses on the ultimate question of whether, looking at the products in their totality, consumers are likely to be confused."  *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 115 (2d Cir. 2009) (cleaned up); *Luxottica Grp. S.p.A. v. Wafa Ali, Inc.*, No. 19-CV-6582 (FPG), 2021 WL 2525098, at *2 (W.D.N.Y. June 21, 2021).

Plaintiffs have sufficiently shown likelihood of consumer confusion.  First, the strength of the Sylo Mark weighs in favor of Plaintiffs.  The Sylo Mark is presumed to be distinctive by virtue of being registered, which, coupled with its alleged consistency and longevity, support the strength of the mark.  *See Campbell v. Huertas*, No. 20-CV-3471 (KAM), 2023 WL 1967512, at *4–5 (E.D.N.Y. Feb. 13, 2023).  Moreover, Plaintiffs allege that "Sylo has expended substantial time, money, and resources" to market and promote the goods under the Sylo Mark and allege Sylo's "widespread, continuous, and exclusive use of the Sylo Mark to identify its goods and Sylo as their source."  (Am. Compl., ECF No. 7 at 8 ¶¶ 16, 18.)  Thus the first factor, the strength of the Sylo mark, weighs in Plaintiffs' favor.

The second factor, the similarity between the Sylo Mark and Defendants' imitative use, also weighs in Plaintiffs' favor.  The Amended Complaint alleges Defendants' use of the Sylo Mark for the products they listed on Amazon, and the screenshots of these listings show Defendants' use of the Sylo Mark.  (Compl. Ex. C, ECF No. 1-3 at 2–3, 5; Am. Compl., ECF No. 7 at 8–9 ¶¶ 19–20.)  Upon review of Plaintiffs' and Defendants' use of the marks, it is clear that they are identical; both their products prominently state "GROWS BY DAY GLOWS BY NIGHT."  (*Compare* Compl. Ex. B, ECF No. 1-2 at 4, *with* Compl. Ex. C, ECF No. 1-3 at 2–3, 5.)  "[W]hile Defaulting Defendants' default has prevented Plaintiff from

receiving evidence in discovery, the fact that Defaulting Defendants' products are very similar to Plaintiff's relevant products easily supports the inference that consumer confusion will result." *Lighting & Supplies, Inc. v. New Sunshine Energy Sols. Inc.*, No. 20-CV-2790 (FB)(VMS), 2022 WL 771397, at *5 (E.D.N.Y. Feb. 10, 2022), *adopted by* 2022 WL 768302 (E.D.N.Y. Mar. 14, 2022).

The third factor, the competitive proximity of the parties' products, weighs heavily in favor of Plaintiffs. "The proximity factor can apply to both the subject matter of the commerce in which the two parties engage and the geographic areas in which they operate." *Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 826 F.3d 27, 39 (2d Cir. 2016). In this case, Plaintiffs and Defendants sell children's educational kits on e-commerce websites such as Amazon and reach customers around the world. Indeed, Plaintiffs and Defendants both sell the same type of product (*e.g.*, Light-Up Terrariums)—Plaintiff with the Sylo Mark, Defendants with the identical infringing mark.

The fourth factor, the likelihood that Plaintiffs will bridge the gap and offer a product like Defendants' product, is neutral in this case. This factor is most relevant when the alleged infringer presents credible evidence that there is little or no likelihood of consumer confusion because the trademark owner operates in a different field of enterprise or a different geographic area. *See Deep Foods Inc. v. Deep Foods Inc.*, 419 F. Supp. 3d 569, 581 (W.D.N.Y. 2019). As noted above, "because Defendant is already using its marks in both the subject matter area and the geographic area of Plaintiff's commerce, there is no gap. Defendant's use of its marks already causes an actionable likelihood of confusion," and is therefore irrelevant to whether Plaintiffs have proven Defendants' liability. *Guthrie*, 826 F.3d at 45.

Fifth, "[a]ctual confusion need not be shown to prevail under the Lanham Act, because actual confusion is very difficult to prove, and the Act requires only a *likelihood* of confusion as to source." *Campbell*, 2023 WL 1967512, at *6.  As discussed in the analysis of the third and fourth factors, consumers would likely be actually confused as to the source of Defendants' products.  This factor thus weighs in favor of Plaintiffs.

The remaining factors overall support Plaintiffs' position, though not as clearly as the first, second, third, and fifth factors.  For example, the sixth factor, bad faith, only somewhat favors Plaintiffs (or is neutral) because, while Plaintiffs allege that Defendants' conduct is "willful," their allegations of bad faith as to infringement of the Sylo Mark specifically are conclusory. (Am. Compl., ECF No. 7 at 9 ¶ 24.)  Additionally, it is unclear from the record when Plaintiffs informed Defendants about their infringement on the Sylo Mark and whether or when Defendants stopped offering their infringing products for sale on Amazon.  *Cf. Lighting & Supplies*, 2022 WL 771397, at *5 ("Defaulting Defendants demonstrated bad faith by continuing to engage in infringing conduct after receiving a demand to stop engaging in such conduct.").  The quality of the product, the seventh factor, is neutral because Plaintiffs do not allege, nor does any evidence in the record suggest, that Defendants' products are of lower quality than Plaintiffs'.  That said, Plaintiffs fare better with the eighth and last factor, the sophistication of the consumers.  The products are offered to the general public, and there is no evidence that consumers would have specialized knowledge to differentiate between Plaintiffs' and Defendants' educational kits.  *See id.* ("There is no evidence offered to show that an average consumer would have the specialized knowledge or wherewithal to avoid confusion between a copycat [product] bearing the Infringing Marks and the genuine product.").

Given the totality of the factors and the likelihood of consumer confusion, the Court finds that Plaintiffs have shown trademark infringement under the Lanham Act as to the corporate Defendants Tengxin and Juzihao.

### 2.    Qiong

As with their copyright infringement claim, Plaintiffs fail to show that Qiong is personally liable for trademark infringement.   The "moving, active, conscious force" standard for individual liability also applies to trademark infringement claims.  *Luxottica Grp.*, 2021 WL 2525098, at *2.  "A corporate officer may be deemed such a force when the officer was either the sole shareholder and employee, and therefore must have approved of the infringing act, or a direct participant in the infringing activity."  *Innovation Ventures*, 176 F. Supp. 3d at 155 (cleaned up).  As noted above, the Amended Complaint does not contain any allegations that Qiong falls into either category and therefore is insufficient to subject him to liability.

Accordingly, the Court respectfully recommends that corporate defendants Tengxin and Juzihao, but not Qiong, should be liable for trademark infringement as alleged in Count II.[8]

### C.    Common Law Trademark Infringement (Count III)

"To prevail on a common law claim of trademark infringement, a plaintiff need only present evidence sufficient to establish a violation of section 32(1) of the Lanham Act."  *Sola Franchise Corp.*, 2015 WL 1299259, at *13.  Thus, for the same reasons discussed above that the Court found trademark infringement under the Lanham Act, the Court finds that Plaintiffs have established common law trademark infringement.  Accordingly, the Court respectfully

---

[8] The Court reaches the same conclusions for the remaining claims in the Amended Complaint, which apply a similar standard for individual liability.

recommends liability as to corporate defendants Tengxin and Juzihao for common law trademark infringement alleged in Count III.

### D.    Unfair Competition (Count IV)

Plaintiffs allege that they have met the standard for unfair competition "under federal law or New York state law."  (Am. Compl., ECF No. 7 at 10 ¶ 32.)  In an abundance of caution, the Court addresses both.

Section 43(a) of the Lanham Act provides that a person who "uses in commerce any word, term, name, symbol, or device . . . which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person" shall be liable.  15 U.S.C. § 1125(a)(1)(A).  Under the Lanham Act, the unfair competition test "utilizes the same principles and standards as are used for trademark infringement claims."  *Spin Master Ltd. v. Alan Yuan's Store*, 325 F. Supp. 3d 413, 423 (S.D.N.Y. 2018) (citing § 1125(a)).  "To establish a claim for common law unfair competition, a plaintiff must state a Lanham Act claim coupled with a showing of a defendant's bad faith or intent."  *Id.* at 424 (citing *Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137, 149 (2d Cir. 1997)); *see also Moshik Nadav Typography LLC v. Banana Republic, LLC*, No. 20-CV-8325 (JMF), 2021 WL 2403724, at *3 (S.D.N.Y. June 10, 2021) ("The essence of an unfair competition claim under New York law is that the defendant has misappropriated the labors and expenditures of another with some element of bad faith.").

Here, Plaintiffs have met the standard for a Lanham Act unfair competition claim for the same reasons they satisfied the standard for trademark infringement.  *Spin Master*, 325 F. Supp. 3d at 423.  Additionally, Plaintiffs have satisfied the New York law unfair competition standard because Defendants' use of the Sylo Mark includes a presumption of bad faith and

Defendants' defaulting supports this inference of bad faith. *See Sola Franchise Corp.*, 2015 WL 1299259, at *14. Accordingly, the Court respectfully recommends liability as to corporate defendants Tengxin and Juzihao for unfair competition under the Lanham Act and common law as claimed in Count IV.

### E.    False Designation of Origin (Count V)

Section 43(a) of the Lanham Act also provides that any person who "uses in commerce . . . any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion or to cause mistake, or to deceive as to the . . . origin, sponsorship, or approval" of the person's products shall be liable. 28 U.S.C. § 1125(a)(1)(A). "The elements necessary to prevail on a claim for unfair competition under New York common law mirror federal Lanham Act claims." *Luxottica Grp.*, 2021 WL 2525098, at *3; *Innovation Ventures*, 176 F. Supp. 3d at 155. Because Plaintiffs established trademark infringement and unfair competition for the reasons discussed, Plaintiffs also demonstrate corporate defendants Tengxin and Juzihao's liability for false designation of origin under the Lanham Act and common law. Accordingly, the Court respectfully recommends granting Plaintiffs' motion as to Count V.

### F.    Tortious Interference with Prospective Economic Advantage (Count VI)

Under New York common law, to state a claim for tortious interference with prospective economic advantage, a plaintiff must demonstrate that: "(1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship." *Eminah Props. LLC v. Energizer Holdings, Inc.*, 531 F. Supp. 3d 593, 607 (E.D.N.Y. 2021)

(quoting *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 400 (2d Cir. 2006) (cleaned up); *Daniels v. Kostreva*, No. 15-CV-3141 (ARR)(LB), 2017 WL 823583, at *9 (E.D.N.Y. Jan. 12, 2017) (recommending denial of default judgment motion on claim for tortious inference for failure to sufficiently state claim), *adopted by* 2017 WL 519227 (E.D.N.Y. Feb. 8, 2017).

Plaintiffs fail to allege sufficient facts to state a claim for tortious interference with prospective economic advantage.  Plaintiffs claim that they have a contractual relationship with Amazon for selling their products.  (Am. Compl., ECF No. 7 at 11–12 ¶ 39.)  They also allege that Defendants would be aware of Plaintiffs' relationship with Amazon, and the fact that Plaintiffs may wish to enter into future contracts with Amazon, because Defendants also sell products on Amazon. (*Id.* at 12 ¶ 40.)  Plaintiffs reference a letter to Amazon from Qiong stating that Amazon's removal of Defendants' products was improper and allege that Qiong's communication used "dishonest, unfair, and improper means."  (*Id.* ¶ 41; *see* Compl. Ex. A, ECF No. 1-1 at 2.)  However, Plaintiffs fail to sufficiently allege how they have been harmed or how any of the Defendants injured their relationship with Amazon.  (Am. Compl., ECF No. 7 at 12 ¶¶ 42–43.)  Overall, Plaintiffs' claims include conclusory statements that do not support a claim for tortious interference with prospective economic advantage because they do not specify any injury.  *See Eminah Props.*, 531 F. Supp. 3d at 607 (no liability for tortious interference when plaintiff did not explain how its relationship with third party was damaged and only provided "conclusory allegations" that defendant interfered with that business relationship); *see also Daniels*, 2017 WL 823583, at *9 (same).  Thus, the Court respectfully recommends that Plaintiffs' motion should be denied as to Count VI.

### G.    Trade Libel (Count VII)

To state a claim for trade libel, Plaintiffs must plead "(1) falsity of the statement, (2) publication to a third person, (3) malice (express or implied), and (4) special damages." *Eminah Props*, 531 F. Supp. 3d at 607 (cleaned up).  Special damages are "limited to losses having pecuniary or economic value, and must be fully and accurately stated, with sufficient particularity to identify actual losses. . . [S]pecial damages must be the natural and immediate consequence of the disparaging statements to be recoverable."  *Id.* at 608; *see also Grp. One Ltd. v. GTE GmbH*, 625 F. Supp. 3d 28, 69 (E.D.N.Y. 2022) (denying default judgment motion upon finding plaintiff failed to satisfy the elements for trade libel when plaintiff did not itemize exact damages).

Plaintiffs allege that Qiong's letter to Amazon about the removal of the Brave Finder Dino Eggs Kit contains false statements and was made with malice.  (Am. Compl., ECF No. 7 at 12 ¶¶ 45–47.)  As a threshold matter, Plaintiffs assert that "Defendants" made the false statements, but the only signatory to the letter is Qiong.  (Compl. Ex. A, ECF No. 1-1.) Plaintiffs therefore fail to explain how each Defendant acted with malice or made false statements.  Even assuming that Plaintiffs' barebones allegations could conceivably satisfy the first three elements for a trade libel claim, Plaintiffs do not offer any factual allegations regarding special damages to state a claim for trade libel.  *See Grp. One Ltd. v. GTE GmbH*, No. 20-CV-2205 (MKB)(JRC), 2022 WL 1407179, at *14 (E.D.N.Y. Feb. 28, 2022), *adopted in relevant part by* 625 F. Supp. 3d 28 (E.D.N.Y. 2022).  Plaintiffs' motion papers also do not set forth any arguments about special damages, other than to assert that they should be awarded.  (*See* Mem., ECF No. 20-1 at 17.)  The Court therefore respectfully recommends that Plaintiffs' motion should be denied as to the trade libel claim in Count VII.

VI.   __DAMAGES__

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Bricklayers*, 779 F.3d at 189 (cleaned up).   Rather, Plaintiffs must prove damages with reasonable certainty. *Balhetchet v. Su Caso Mktg., Inc.*, No. 19-CV-4475 (PKS)(SJB), 2020 WL 4738242, at *3 (E.D.N.Y. Aug. 14, 2020).   Here, Plaintiffs request a total of $375,000 in statutory damages for copyright infringement, as well as a permanent injunction enjoining Defendants from infringing the Sylo Mark, prejudgment interest, attorneys' fees, and costs.   (Mem., ECF No. 20-1 at 18–23; *see also* ECF No. 20-14.)

A.      **Statutory Damages for Copyright Infringement**

Under the Copyright Act, an infringer is liable for either "(1) the copyright owner's actual damages and any additional profits of the infringer . . . or (2) statutory damages." 17 U.S.C. § 504(a); *Martinka v. Yeshiva World News, LLC*, No. 20-CV-5530 (KAM)(VMS), 2022 WL 4484655, at *6 (E.D.N.Y. Sept. 27, 2022) (citing *Twin Peaks Prods., Inc. v. Publ'ns Int'l*, 996 F.2d 1366, 1380 (2d Cir. 1993)).   "[T]he copyright owner may elect . . . to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work . . .   a sum of not less than $750 or more than $30,000 as the court considers just."   17 U.S.C. § 504(c)(1).   For willful infringement, a court may increase the award of statutory damages to a sum not greater than $150,000.   *Id.* § 504(c)(2).   In calculating the appropriate statutory damages, a court should consider:

> (1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties.

*Hollander Glass Texas, Inc. v. Rosen-Paramount Glass Co., Inc.*, 291 F. Supp. 3d 554, 559 (S.D.N.Y. 2018) (quoting *Bryant v. Media Right Prods.*, 603 F.3d 135, 144 (2d Cir. 2010)), *adopted by* Order Adopting Rep. & Rec., 17-CV-2105 (VSB)(GWG) (S.D.N.Y. Feb. 1, 2019).

The factors related to Defendants' default do support a statutory award of damages, albeit not Plaintiffs' requested statutory damages of $75,000 per infringement.  For example, the infringer's state of mind favors Plaintiffs because, as previously discussed, the corporate defendants' infringement was willful.  Further, "because [Defendants] defaulted in the action, the full extent of their profits and Plaintiffs' losses is unknown, and any uncertainty should be resolved against [Defendants]." *Luxottica Grp.*, 2021 WL 2525098, at *5.  Similar reasoning applies to whether Defendants have cooperated in this litigation.  But while Plaintiffs have demonstrated that their educational kits retail for $24.99 each on Amazon (*see* Am. Compl. Ex. B, ECF No. 1-2), they have not alleged or offered evidence that their revenue loss was so significant to justify a substantial statutory damages award.  *Cf. Kelly Toys Holdings, LLC v. alialialiLL Store*, 606 F. Supp. 3d 32, 51 (S.D.N.Y. 2022) (awarding $50,000 per infringing defendant to toymaker plaintiff who alleged that its products had sold over 73 million units globally since 2017 and provided affidavits related to same).  Additionally, "[c]ases where high statutory damages are awarded typically involve defendants who profit significantly despite repeated notices that they are infringing on the plaintiff's copyright." *Hollander*, 291 F. Supp. 3d at 560.  In contrast, Plaintiffs do not allege or offer evidence that Defendants have continued infringing activity despite multiple cease-and-desist notices.  (*See generally* Am. Compl., ECF No. 7; Mem., ECF No. 20-1.) Rather, Plaintiffs' memorandum asks for statutory damages "sufficient to discourage Defendant[s] from resuming infringing activity," suggesting that the infringing activity stopped or that all the Amazon postings for Defendants'

infringing products were removed.  (*See* Mem., ECF No. 20-1 at 22.)  Finally, a reasonable damages award will accomplish the deterrent effect on infringers and third parties that Plaintiffs seek but also reflects the relative paucity of evidence presented to the Court to justify a higher award.  *See Hollander*, 291 F. Supp. 3d at 559.

Thus, because Plaintiffs have shown willful infringement but do not allege that Defendants continue to infringe despite Plaintiffs' efforts, a statutory award of $25,000 per infringed Work is appropriate.  *See, e.g.*, *Sadowski v. Render Media Inc.*, 2020 WL 1178629, at *4 (S.D.N.Y. Mar. 10, 2020) (collecting cases), *adopted by* 2020 WL 5968668 (S.D.N.Y. Oct. 8, 2020); *Hollander*, 291 F. Supp. 3d at 559–60 (collecting cases).  Accordingly, the Court respectfully recommends awarding Plaintiffs a total of $125,000 in statutory damages for copyright infringement.

### B.    Permanent Injunction

"'A court may issue an injunction on a motion for a default judgment provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute and (2) meets the prerequisites for the issuance of an injunction.'"  *Grp. One Ltd.*, 625 F. Supp. 3d at 70 (quoting *Kaneka Corp. v. Purestar Chem. Enter. Co.*, No. 16-CV-4861, 2018 WL 3215680, at *4 (E.D.N.Y. May 1, 2018)).  Under the Lanham Act and Copyright Act, a district court has authority to grant injunctive relief to prevent further violations of a plaintiff's trademarks and copyrights. 15 U.S.C. § 1116; 17 U.S.C. § 502; *Kelly Toys*, 606 F. Supp. 3d at 51.  "The Court may enter a permanent injunction to prevent further violations of trademark infringement and counterfeiting if plaintiff has demonstrated: '(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships

between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.'" *Spin Master Ltd. v. 158*, 463 F. Supp. 3d 348, 376 (S.D.N.Y. 2020) (quoting *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)).

All four factors weigh in favor of Plaintiffs. "Under the remedial provisions of the Lanham Act, a plaintiff who has established infringement is entitled to a rebuttable presumption of irreparable harm." *Kelly Toys*, 606 F. Supp. 3d at 52. In this case, liability under the Lanham Act has been determined in Plaintiffs' favor, which is a "strong factor in favor of issuing an injunction." *Stark Carpet*, 954 F. Supp. 2d at 158. Additionally, "a showing that there is no adequate remedy at law is satisfied where the record contains no assurance against defendant's continued violation" of Plaintiffs' rights and there is a "threat of continuing violations." *Kelly Toys*, 606 F. Supp. 3d at 52. Here, because Defendants are foreign entities and an individual located outside the United States, "there is serious doubt that Plaintiffs will be successful in collecting any monetary award" the Court could issue. *Grp. One*, 625 F. Supp. 3d at 71–72 (cleaned up). Moreover, where liability is established, the balance of hardships leans towards Plaintiffs, who would lose sales and profit if Defendants were to continue infringing on their product. *See id*. This Court agrees with Plaintiffs' assertion that an injunction will not cause Defendants significant hardship because it will merely require them to comply with trademark law. (Mem., ECF No. 20-1 at 19.) Finally, "the public interest is served by a permanent injunction, as the public has an interest in not being deceived—in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality." *Kelly Toys*, 606 F. Supp. 3d at 53 (cleaned up).

The Sylo Mark and the infringing mark are identical; thus, there is a very high probability of consumer confusion and that Defendants will continue to infringe. Accordingly, an injunction is warranted here, and the Court respectfully recommends entry of permanent injunction enjoining Defendants from continuing to infringe on the Sylo Mark.[9]

## C.   Prejudgment Interest, Attorneys' Fees, and Costs

Plaintiffs request prejudgment interest and attorneys' fees and costs in their Amended Complaint and proposed order for default judgment but offer no supporting facts or law in their motion papers. (Am. Compl., ECF No. 7 at 16 ¶¶ N, O, P; ECF No. 20-14 at 3; *see generally* Mem., ECF No. 20-1.)

The Lanham Act does not expressly provide for prejudgment interest, but the decision to award such interest lies within the court's discretion. *Stark Carpet*, 954 F. Supp. 2d at 156. Here, considering the lack of argument or supporting laws as to the request for prejudgment interest, or any details about the request (such as the applicable rate or the period during which the interest would apply), the Court respectfully recommends that Plaintiffs' request for prejudgment interest should be denied. *See Gidatex, S.r.L. v. Campaniello Imports, Ltd.*, 82 F. Supp. 2d 136, 151 (S.D.N.Y. 2000) (denying request for prejudgment interest because plaintiff "offered no reason why it requires additional compensation" on its statutory damages award).

A plaintiff with a successful Lanham Act claim is also entitled to costs and, in exceptional cases, may be awarded attorneys' fees. 15 U.S.C. § 1117. "'The most useful

---

[9] Plaintiffs also seek a permanent injunction enjoining Defendants from "interfering with Plaintiffs' contracts with Amazon.com." (Mem., ECF No. 20-1 at 18.) The Court declines any further injunctive relief where, as here, Plaintiffs "have not shown that the additional terms requested are warranted. A permanent injunction should be 'no broader than necessary to cure the effects of the harm caused.'" *Luxottica Grp.*, 2021 WL 2525098, at *8 n.4 (quoting *Sterling Drug, Inc. v. Bayer AG*, 14 F.3d 733, 750 (2d Cir. 1994)).

starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" *Hollander*, 291 F. Supp. 3d at 560 (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 186 (2d Cir. 2008)).  The applicant bears the burden to demonstrate reasonableness. *See Lighting & Supplies*, 2022 WL 771397, at *8 ("To recover attorneys' fees, a party must supply time records, which specify, for each attorney, the date, the hours expended, and the nature of the work done.") (cleaned up).  As with their request for prejudgment interest, Plaintiffs fail to specify the amount of requested attorneys' fees or litigation costs and offer any records or other information sufficient for the Court to consider their reasonableness. Accordingly, the Court respectfully recommends that Plaintiffs' request for attorneys' fees and costs also should be denied.

### D.   Post-Judgment Interest

Plaintiffs also haphazardly seek post-judgment interest by including it in the proposed default judgment order and at the end of the Amended Complaint without requesting it in their memorandum of law.  (Am. Compl., ECF No. 7 at 16; ECF. No. 20-14; *see generally* Mem., ECF No. 20-1.)  Post-judgment interest is awarded on any money judgment in a civil case. 28 U.S.C. § 1961. " Post-judgment interest is measured 'from the date of entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield . . . for the calendar week preceding the date of the judgment,' 'computed daily to the date of payment,' and 'compounded annually.'"  *Spin Master*, 325 F. Supp. 3d at 426 (quoting 28 U.S.C. § 1961(a)–(b)).  Accordingly, the Court respectfully recommends awarding Plaintiffs post-judgment interest in an amount to be determined using the statutory formula.

## VII.    <u>CONCLUSION</u>

In sum, Plaintiffs have established liability as to their copyright, trademark infringement, unfair competition, and false designation of origin claims only.  Accordingly, the Court respectfully recommends that Plaintiffs' motion should be **granted in part** as follows: (1) default judgment should be entered against Defendants Juzihao Resource Management Co. Ltd. and Tengxin Plastic Product Factory Co. Ltd. for copyright infringement, trademark infringement, unfair competition, and false designation of origin as alleged in Counts I, II, III, IV, and V; (2) a permanent injunction should be entered enjoying Defendants from continuing to infringe on the Sylo Mark; and (3) Plaintiffs should be awarded (a) statutory damages in the total amount of $125,000 and (b) post-judgment interest at the rate set forth in 28 U.S.C. § 1961.  All other requests for relief in Plaintiffs' motion should be **denied**.

A copy of this Report and Recommendation is being served on Plaintiffs via ECF.  The Clerk of Court is respectfully directed to email a copy of this Report and Recommendation to Defendants at the following email addresses forthwith: (1) twang@nilawfirm.com, (2) pieliao0778@163.com, (3) trademarkip@foxmail.com, (4) 253255779@qq.com, (5) orders@trademarkraft.com, (6) nyall@globalilp.uk, and (7) globalip@qq.com.

Within 14 days of service, any party may serve and file specific written objections to this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  Any requests for an extension of time to file objections shall be directed to Judge Komitee.  If a

party fails to object timely to this Report and Recommendation, it waives any right to further judicial review of this decision. *See Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022).

**SO ORDERED.**

Brooklyn, New York
September 28, 2023

/s/Marcia M. Henry
MARCIA M. HENRY
United States Magistrate Judge